**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| MICHAEL E. McGLOTHIN, | : | Case No. 3:18-cv-00052 |
|---|---|---|
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Michael E. McGlothin began working in 1982 and continued to work for more than two decades. In 2014, he concluded that his health problems prevented him from working any longer, and he applied for Disability Insurance Benefits.

The Social Security Administration, through a decision by Administrative Law Judge (ALJ) Eric Anschuetz, denied Plaintiff's application for Disability Insurance Benefits. ALJ Anschuetz found that although Plaintiff's health problems limited his ability to work, he could still do a significant number of available jobs. This led ALJ Anschuetz to conclude that Plaintiff was not under a "disability" as defined by the Social Security Act. And without such a disability, he was not eligible to receive Disability Insurance Benefits. *See* 42 U.S.C. § 423(a)(1)(E).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff contends in the present case that ALJ Anschuetz erred by (1) rejecting the opinions of his long-term treating psychiatrist Sunita Agarwal, M.D.; and, (2) failing to accept the state-agency record-reviewing physicians' opinion about his limited ability to perform mental-work activities.

The Commissioner counters that (1) substantial evidence supports the ALJ's decision; (2) the ALJ properly accorded Dr. Agarwal's opinions little weight in light of the record as a whole; and, (3) the ALJ provided the requisite "good reasons" for discounting Dr. Agarwal's opinions and appropriately weighed her opinions in accordance with the law.

## II.     "Disability" Defined

As alluded to above, eligibility to receive Disability Insurance Benefits depends, among other things, on whether the applicant for such benefits was under a "disability" as defined by social security law. *See Bowen v. City of New York*, 476 U.S. 467, 470 (1986). A disability exists when an applicant's long-lasting (at least one year) "medically determinable physical or mental impairment" prevents him or her from engaging in "any substantial gainful activity." 42 U.S.C. §§ 423(d)(1)-(2)(A).

## III.    Background
## A.      <u>Plaintiff and His Testimony</u>

On June 17, 2014, the date Plaintiff's asserted disability began, he was 49 years old—a person "closely approaching advanced age" under Social Security law. *See* Doc. #8, *PageID* 55. He has a high-school education.

At the outset of Plaintiff's administrative hearing, ALJ Anschuetz noted that Plaintiff had "an excellent work history from 1982 to 2008." *Id*. at 69. He was laid off in 2008 and his income level fell to $848 in 2009. *Id*. at 69, 226. Over the next three years, he went from "[o]ne job to the next, to the next, to the next, to the next, not keeping a job, holding a job down." *Id*. at 69.

From January 2013 to June 2014, he worked as a blade maker for a manufacturing company. *Id*. at 249. He testified, "that's probably the toughest job I ever had, mentally. I just couldn't take it. I tried. I was there altogether almost two years, and the people were just so backstabbing…." *Id*. at 75. He explained that he had an absenteeism problem because his wife had cancer and was going through treatment, including chemotherapy. A new plant manager told him they would be happy to work with him about his absenteeism due to his wife's cancer. But the plant manager also told him that if he missed one more day of work during the next year, he would be fired. These paradoxical statements angered Plaintiff to the point he "went into a rage," but he "kept it internal." *Id*. at 76. Still, his emotional reaction was extreme: He told the ALJ, "I just wanted hurt everybody there, and that's not me. I'm a… very pacifist person. But this place just pushed me beyond limits … even I knew I had, I didn't know what I was capable of. So I just sat—went back to my workstation…." *Id*. He said (perhaps to himself), "I can't take this anymore. I can't. And I—just like they broke me. And I said I just can't do this. I have to get out of here before somebody gets hurt, either somebody else or me. And so I just walked out and left. And to be honest with you, I don't—I'm

3

scared to even look for a job now, because I don't trust people. I don't trust… —I just don't trust any of it." *Id*.

Plaintiff testified that he cannot perform sedentary jobs because of his mental-health problems. He does his best to stay away from people because he does not trust them. Being around people causes his panic attacks. He noted, "I'm just not good with people. I literally have no desire to be around people." *Id*. at 88.

At one of Plaintiff's past jobs, the plant manager would watch everything Plaintiff did because he wanted Plaintiff to lose his job. Plaintiff had no idea why the plant manager wanted this. Plaintiff said, "he hated my guts and wanted me out of that job." *Id*. at 102.

Plaintiff also discussed his desire to get better and his participation in mental-health counseling. He informed the ALJ that he saw Dr. Agarwal, his psychiatrist, every 2 months. *Id*. at 116-17.

B. **Medical Records**

Plaintiff does not argue that the ALJ erred in his findings about Plaintiff's physical impairments and limitations. It is therefore the mental-health evidence that draws attention.

Plaintiff underwent counseling with Mental Health Services of Clark and Madison Counties, starting in September 2014. Over the next few years, he participated in therapy with counselors (different ones at different times). He took Xanax daily to combat his anxiety and panic attacks. In January 2015, Dr. Agarwal prescribed Plaintiff Seroquel

4

and continued his prescription for Klonopin. *Id*. at 377.

In September 2015, Dr. Agarwal completed a Medical Source Statement. She noted that she began treating Plaintiff on January 21, 2015. Plaintiff reported to Dr. Agarwal that his condition had been going on since June 17, 2014. *Id*. at 424.

Dr. Agarwal believed that Plaintiff had "extreme" limitations—meaning he was "unable to function in this area over 50% of the work day or work week …," *id*. at 425—in four areas of mental-work abilities: (1) his ability to work in coordination with or in proximity to others without distracting them or exhibiting behavioral extremes; (2) his ability to respond appropriately to co-workers or peers; (3) his ability to perform at production levels expected by most employers; and (4) his ability to behave predictably, reliably, and in an emotionally stable manner. *Id*. at 425-26.

Dr. Agarwal found Plaintiff had "marked" limitations—meaning he was "unable to function in this area from 26% to 50% of the work day or work week…," *id*.—in many areas, including his ability to: (1) accept instruction from or respond appropriately to criticism from supervisors or superiors; (2) relate to the general public and maintain socially appropriate behavior; (3) perform and complete work tasks in a normal work day or work week at a consistent pace; (4) work in cooperation with or in proximity to others without being distracted by them; (5) process subjective information accurately and to use appropriate judgment; (6) carry through instructions and complete tasks independently; (7) maintain attention and concentration for more than brief periods of time; and (8) respond appropriately to changes in work setting. *Id*. at 384-86.

5

Dr. Agarwal reported that Plaintiff had "very low frustration tolerance" and "anger outbursts despite taking medicines." *Id*. at 386. She thought that Plaintiff was likely to have partial or full-day unscheduled absences from work occurring 5 or more days per month due to his conditions and medication side effects. *Id*.

Record-reviewing psychologist Tonnie Hoyle, Psy.D. opined in March 2015 that Plaintiff was markedly limited in his ability to carry out detailed instructions and markedly limited in his ability to interact with the public. *Id*. at 137-138. She further believed that Plaintiff was moderately limited in his ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id*. at 138. She explained that Plaintiff's symptoms interfere with his ability to sustain close consistent attention to detail. *Id*.

Two months later, psychologist Mary K. Hill, Ph.D. reviewed Plaintiff's medical records. She found that Plaintiff was markedly limited in his ability to interact appropriately with the public and moderately limited in other areas of his mental-work functioning. *Id*. at 150-51. The latter included that Plaintiff was moderately limited in his ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id*. at 151. Dr. Hill explained that Plaintiff's symptoms will limit his concentration, persistence, and pace (c/p/p) and his ability to tolerate normal work pressures. And Dr. Hill thought Plaintiff could perform

6

one to three steps tasks with no more than moderate pace or production quotas. *Id.*

## IV. The ALJ's Decision

ALJ Anschuetz's decision tracked the 5-step analysis required by Regulation, specifically 20 C.F.R. § 404.1520. His more significant findings began (step 2) with the recognition of Plaintiff's severe impairments—namely, "osteoarthritis; degenerative disc disease; degenerative joint disease [in his] left knee; anxiety disorder; attention deficit disorder/attention hyperactive disorder; history of substance abuse in alleged remission." (Doc. #8, *PageID* #49). The ALJ next (step 3) determined that Plaintiff was not automatically eligible for benefits under the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

At the next step (step 4), the ALJ evaluated and determined the most Plaintiff could do despite his impairments—his residual functional capacity. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). He found that Plaintiff could perform light work with many physical- and mental-work limitations. The ALJ described Plaintiff's mental-work limitations as follows: "Due to mental health impairments, the claimant is limited to performing simple, routine, repetitive tasks, but not at a production rate. He can have occasional interaction with supervisors, coworkers, and the public. He needs to have a stable work environment with gradual changes…." (Doc. #8, *PageID* #51).

Plaintiff's limitations, both physical and mental, led the ALJ to find (step 4) that he could not perform his previous work but could (step 5) do a significant number of jobs

available in the national economy. *Id.* at 54-56. These and other finding led to ALJ Anschuetz's final conclusions that Plaintiff was not under a disability and not eligible for benefits. *Id.*

## V.     Standard of Review

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *see Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647,

651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

VI. **Discussion**

The ALJ's decision to place little weight on Dr. Agarwal's opinions is at the forefront of this case. The ALJ recognized that Dr. Agarwal looked at the form Dr. Agarwal completed and concluded, "I give Dr. Agarwal's opinion little weight; however, the extreme and marked limitations are not supported in the treatment notes." (Doc. #54).

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20

9

C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)).[2]

The ALJ's single reason to for placing little weight on Dr. Agarwal's opinions—"the extreme and marked limitations are not supported in treatment notes…." (Doc. #8, *PageID* #54)—is insufficient. The ALJ did not cite any specific evidence to support this conclusion. He did not point to any examples of treatment notes upon which he rested his conclusion. And he did not explain what treatment records led him to reach his conclusion. By itself, his lone conclusion fails to provide good reasons for discounting Dr. Agarwal's opinions because it is not "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical

---

[2] The Commissioner has rescinded Soc. Sec. R. 96-2p, "effective for claims filed on or after March 27, 2017." *See* 82 FR 15263-01, 2017 WL 1105348 (March 27, 2017). At the time of ALJ Anschuetz's decision in this case, Soc. Sec. R. 96-2p was still in effect.

opinion and the reasons for that weight.'" *Gayheart*, 710 F.3d at 376 (quoting Ruling 96–2p, 1996 WL 374188, at *5). There is, moreover, no indication in the ALJ's mention of Dr. Agarwal's opinion that he evaluated Dr. Agarwal's opinions under the treating-physician rule. As a result, the ALJ's decision does not permit a meaningful review of his application of that rule and thus fails to comply with the good-reasons requirement. *Id*. (the good-reasons "requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" (quoting *Wilson,* 378 F.3d at 544)).

The Commissioner's contention that the ALJ evaluated Dr. Agarwal's opinions in light of the record as a whole lacks merit. The incorporeal reference to the record as a whole sidesteps, without alleviating, the ALJ's mistake in failing to provide good reasons for placing little weight on Dr. Agarwal's opinions. The ALJ, moreover, did not mention evidence in "the record as a whole" when assessing Dr. Agarwal's opinions and did not point to any particular evidence—his reference to Dr. Agarwal's "treatment notes" is too general to matter. *See* Doc. #8, *PageID* #54.

The Commissioner borrows the reference "the record as a whole" from K*epke v. Comm'r of Soc. Sec*., 636 F. App'x 625, 628-29 (6th Cir. 2016) but takes it out of context. *Kepke* states, "In determining whether substantial evidence is inconsistent with the treating source's opinion, the ALJ must examine the record as a whole, 'not just medical opinions.'" *Id*. This is a far cry from saying that an ALJ's examination of the record as a whole excuses an ALJ's failure to comply with the good-reasons mandate.

"Put simply, it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010).

Turning to the record-reviewing psychologists' opinions, the regulations required the ALJ to consider several factors—at a minimum, the factors of supportability, consistency, and specialization—when weighing their opinions. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 836-37 (6th Cir. 2016). Yet ALJ Anschuetz did not do so in any meaningful way. He instead placed "partial weight" on their opinions "because they are experienced medical personnel who reviewed all the medical evidence of record available." (Doc. #8, *PageID* #54). This merely reiterated what is true of all physicians or psychologists—treating or otherwise: they are experienced medical personnel. The fact, moreover, that Drs. Hoyle and Hill reviewed all the available medical records is a mere acknowledgment of a circumstance rather that an insight into the validity of their opinions provided by an application of the regulatory factors. For these reasons, the ALJ's review of Drs. Hoyle's and Hill's opinions fails to comply with the regulations. *See* Soc. Sec. Ruling 96-6p, 1996 WL 374180, *3 (July 2, 1996) ("The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker….").

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.

## VII. Remand

A remand is warranted when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Examples of situation where remand may be warranted include the ALJ's failure to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong

13

while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. The ALJ should be directed to evaluate, on remand, the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Michael McGlothin was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and any Decision and Entry adopting this Report; and

4. The case be terminated on the docket of this Court.


April 30, 2019                                *s/Sharon L. Ovington*
                                              Sharon L. Ovington
                                              United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).